# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| T&B Associates, Inc., on behalf of itself and all others similarly situated,<br><br>                       Plaintiff,<br><br>     v.<br><br>WILLIAM A. COLLINS; DAVID M. FARBER; CHUN LI; ISADORE H. MAY; RICHARD J. PISCIOTTA, JR.; ROBERT E. ROTHMAN; ROBERT W. STEIN; DAVID BUTLER; STEPHEN E. HRUBY; CRUSADER SERVICING CORPORATION; ROYAL TAX LIEN SERVICES, LLC; CCTS, LLC; CCTS TAX LIENS I, LLC; CCTS TAX LIENS II, LLC; CCTS CAPITAL LLC; DSBD, LLC; PRO CAPITAL LLC; MICHAEL FABRIKANT & ASSOCIATES INC.; ROYAL BANCSHARES OF PENNSYLVANIA, INC.; M.D. SASS INVESTORS SERVICES, INC.; M.D. SASS TAX LIEN MANAGEMENT L.L.C.; M.D. SASS MUNICIPAL FINANCE PARTNERS – III, LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS – IV, LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS – V, LLC; AND M.D. SASS MUNICIPAL FINANCE PARTNERS – VI, LLC,<br><br>                       Defendants. | Civil Action No.:<br><br><br>**COMPLAINT** |

Plaintiff T&B Associates, Inc. (hereinafter "Plaintiff"), by its attorneys, on behalf of itself and all others similarly situated, as and for its complaint against defendants, alleges as follows:

1.      All allegations made in this complaint are based upon information and belief except those allegations that pertain to Plaintiff, which is based on personal knowledge.

## I.     NATURE OF THE ACTION

2.      All real property owners in New Jersey are required to pay, on a quarterly basis, their respective municipal property taxes and/or charges for such municipal services as sewer and water services.  When a property owner fails to make such payments, because, for example,

of financial hardship, New Jersey state law allows the municipality to sell the delinquent

obligation to an investor in an auction.  This permits the municipality to receive monies so that it

can meet its operating costs without having to raise additional revenues by increasing property

taxes.

3.     The winning bidder at the auction receives a "tax sale certificate" (hereafter

"TSC") which is ultimately recorded as a lien against the real property.  There are a number of

benefits and rights associated with the TSC including:  (1) a first priority lien on the real property

at issue; (2) the right to collect on the delinquent obligation; (3) interest and penalties (ranging

from 2-6%) on the delinquent obligation; (4) and the right to foreclose on such property in order

to collect the property tax obligation.  Thus, the winning bidder has a significant security interest

in the property which supersedes all other lienholders in such property.

4.     Each municipality in New Jersey holds such TSC auctions once per year.  The

bidding at the auction opens with the statutory maximum of 18% interest associated with the

delinquent obligation.  With each subsequent bid, the 18% interest rate is bid *down*, and in many

cases, as a result of the bidding process, the interest rate is bid down to close to zero percent.

Thus, the more bidding, the better it is for the property owner.

5.     However, since at least the beginning of 1998 continuing through the present

("Class Period"), the defendants, who are among the largest purchasers of TSC's in the State of

New Jersey, entered in an illegal agreement, combination or conspiracy whereby they would

ensure there was little to no bidding at the auctions.  Prior to each auction, the defendants would

meet and allocate amongst themselves the delinquent property tax obligations up for auction, and

agree to refrain from bidding on those which were not allocated to them.  This resulted in there

being only one bid at the auction, and therefore, the opening bid became the winning bid.  This

would ensure that the delinquent property tax obligation carried the maximum interest rate allowed – 18% – to the benefit of the defendants and to the detriment of the property owner.  As a result of the defendants' illegal conduct alleged herein, real property owners in New Jersey have paid, or are being threatened to pay, tens of millions of dollars in interest which has been artificially inflated due to the defendants' illegal conduct.

6.     The Antitrust Division of the U.S. Department of Justice is currently conducting a criminal investigation into the activities of the defendants.  At least nine of the defendants named herein have pled guilty to Sherman Act violations and have admitted to participating in the conspiracy alleged in this complaint.

7.     Plaintiff brings this action in its own right and on behalf of a class of all others similarly situated.

## II.     JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 4 and 15; and 28 U.S.C. §§ 1331 and 1337, in that this action arises under the federal antitrust laws.  The Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy for the class exceeds $5,000,000, and there are members of the class who are citizens of a different state than the defendants.

9.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) and Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, because defendants reside, transact business or are found within this District, and a substantial part of the events giving rise to the claims arose in this District.

## III.    PARTIES

### A.    Plaintiffs

10.    Plaintiff T&B Associates, Inc., is a New Jersey corporation with its principal place of business at 92 Main Street, Sparta, New Jersey.  A Tax Sale Certificate was issued with respect to Plaintiff's property, and such Tax Sale Certificate was purchased by one of the defendants pursuant to the conspiracy alleged herein.  As a result of the defendants' conduct alleged herein, the interest rate associated with Plaintiff's delinquent tax obligation was artificially inflated and Plaintiff was damaged thereby.

### B.    Defendants

11.    Defendant William A. Collins is an individual residing in Medford, New Jersey. During the Class Period, defendant William A. Collins knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

12.    Defendant David M. Farber is an individual residing in Cherry Hill, New Jersey. During the Class Period, defendant David M. Farber knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

13.    Defendant Chun Li is an individual residing in Wayne, New Jersey.  During the Class Period, defendant Chun Li knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

14.    Defendant Isadore H. May is an individual residing in Margate City, New Jersey. During the Class Period, defendant Isadore H. May knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

15.    Defendant Richard J. Pisciotta, Jr. is an individual residing in Long Beach Township, New Jersey.  During the Class Period, defendant Richard J. Pisciotta, Jr. knowingly

participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

16.     Defendant Robert E. Rothman is an individual residing in New York, New York. During the Class Period, defendant Robert E. Rothman knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

17.     Defendant Robert W. Stein is an individual residing in Huntingdon Valley, Pennsylvania.  Along with defendant Royal Bancshares of Pennsylvania, Inc., Stein owned defendants Crusader Servicing Corporation and Royal Tax Lien Services, LLC.  Stein was also the President of both entities until approximately November 2010 when he was terminated as a result of his participation in the conspiracy alleged herein.  During the Class Period, defendant Robert W. Stein knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

18.     Defendant David Butler is an individual residing in Cherry Hill, New Jersey. During the Class Period, defendant David Butler knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

19.     Defendant Stephen E. Hruby is an individual residing in Hainesport, New Jersey. During the Class Period, defendant Stephen E. Hruby knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy

20.     Defendant Crusader Servicing Corporation ("Crusader") is a Pennsylvania corporation with its principal place of business at 732 Montgomery Avenue, Narbeth, Pennsylvania.  At all times relevant to this complaint, defendant Robert W. Stein was the President and Treasurer of Crusader.  Defendant Crusader is majority owned by defendant Royal Bancshares of Pennsylvania, Inc.  During the Class Period, defendant Crusader knowingly

participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

21.     Defendant Royal Tax Lien Services, LLC ("RTLS") is a Pennsylvania limited liability company with its principal place of business at 732 Montgomery Avenue, Narbeth, Pennsylvania.  Defendant RTLS is majority owned by defendant Royal Bancshares of Pennsylvania, Inc.  During the Class Period, defendant RTLS knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

22.     Defendant CCTS, LLC is a New Jersey limited liability company with its principal place of business at 1415 Route 70 East, Cherry Hill, New Jersey.  During the Class Period, defendant CCTS, LLC purchased TSC's in the State of New Jersey and knowingly participated in the conspiracy alleged herein.

23.     Defendant CCTS Tax Liens I, LLC ("CCTSI") is a New Jersey limited liability company with its principal place of business at 1415 Route 70 East, Cherry Hill, New Jersey. During the Class Period, defendant CCTSI knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

24.     Defendant CCTS Tax Liens II, LLC ("CCTSII") is a New Jersey limited liability company with its principal place of business at 1415 Route 70 East, Cherry Hill, New Jersey. During the Class Period, defendant CCTSII knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

25.     Defendant CCTS Capital LLC ("CCTS Capital") is a New Jersey limited liability company with its principal place of business at 1415 Route 70 East, Cherry Hill, New Jersey. During the Class Period, defendant CCTS Capital purchased TSC's knowingly participated in

the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

26.     Defendant DSBD, LLC is a New Jersey limited liability company with its principal place of business in Voorhees, New Jersey.  During the Class Period, defendant DSDB knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

27.     Defendant Pro Capital LLC is a New Jersey limited liability company with its principal place of business at 1913 Greentree Road, Cherry Hill, New Jersey.  During the Class Period, defendant Pro Capital LLC knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

28.     Defendant Michael Fabrikant & Associates Inc. is a New Jersey corporation with its principal place of business is Freehold, New Jersey.  During the Class Period, defendant Michael Fabrikant & Associates Inc. knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

29.     Defendant Royal Bancshares of Pennsylvania, Inc. ("RBPI") is a Pennsylvania corporation with its principal place of business located at 732 Montgomery Avenue, Narbeth, Pennsylvania.  Defendant RBPI is engaged in, among other things, commercial banking services and the purchase of TSC's in the State of New Jersey.  Defendant RBPI indirectly owns and controls defendants Royal Tax Lien Services, LLC and defendant Crusader Servicing Corp.  At all times relevant to this complaint, defendant RBPI dominated and controlled the finances and decision making processes at defendants Royal Tax Lien Services, LLC and Crusader Servicing Corp.  During the Class Period, defendant RBPI knowingly participated in the conspiracy alleged

herein and purchased, either directly or indirectly, TSC's in the State of New Jersey pursuant to the conspiracy.

30.     Defendant M.D. Sass Investors Services, Inc. is a Delaware corporation with its principal place of business New York, New York.  During the Class Period, defendant M.D. Sass Investors Services, Inc. knowingly participated in the conspiracy alleged herein and purchased, either directly or indirectly, TSC's in the State of New Jersey pursuant to the conspiracy.

31.     Defendant M.D. Sass Tax Lien Management, LLC is a New York limited liability company with its principal place of business in New York, New York.  During the Class Period, defendant M.D. Sass Tax Lien Management, LLC knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

32.     Defendant M.D. Sass Municipal Finance Partners - III, LLC is a Delaware limited liability company with its principal place of business in New York, New York.  During the Class Period, defendant M.D. Sass Municipal Finance Partners - III, LLC knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

33.     Defendant M.D. Sass Municipal Finance Partners - IV, LLC is a Delaware limited liability company with its principal place of business in New York, New York.  During the Class Period, defendant M.D. Sass Municipal Finance Partners - IV, LLC knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

34.     Defendant M.D. Sass Municipal Finance Partners - V, LLC is a Delaware limited liability company with its principal place of business in New York, New York.  During the Class Period, defendant M.D. Sass Municipal Finance Partners - V, LLC knowingly participated in the

conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

35.     Defendant M.D. Sass Municipal Finance Partners - VI, LLC is a Delaware limited liability company with its principal place of business in New York, New York.  During the Class Period, defendant M.D. Sass Municipal Finance Partners - VI, LLC knowingly participated in the conspiracy alleged herein and purchased TSC's in the State of New Jersey pursuant to the conspiracy.

36.     Various other persons, firms or corporations not yet named as defendants in this lawsuit participated as co-conspirators with defendants in the offenses alleged and performed acts and made statements to advance these offenses.

37.     Whenever in this complaint reference is made to any act, deed or conduct of a corporate defendant, the allegation means that defendant engaged in the act, deed or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of such corporate defendant.

## IV.     TRADE AND COMMERCE

38.     During the Class Period, defendants, some of whom are not domiciled in New Jersey, bid on and purchased TSCs in the State of New Jersey with funds provided by institutions which are not domiciled in New Jersey.  In addition, the defendants used instrumentalities of interstate commerce such as telephones, in furtherance of the conspiracy alleged in this complaint.  Thus, defendants' business activities with respect to the purchase of TSCs in New Jersey were within the flow of, and were substantially affected by, interstate trade and commerce.

## V.     FACTUAL BACKGROUND

39.     Virtually every property owner in the State of New Jersey is required to pay certain property taxes and other municipal charges (such as sewer or water charges) to the municipality in which such property is located.  Such charges are typically billed and must be paid on a quarterly basis.  These taxes provide the municipality with funds which the municipality can use to fund its operations.  However, not all property owners can and/or do pay their local property taxes.

40.     New Jersey state law contains a comprehensive scheme which relates to the taxation of real property in New Jersey.  N.J.S.A. 54:5-6 provides that all taxes on real property shall operate as a continuous lien on such property, and all subsequent taxes, interests, penalties and costs of collection shall be added to and become part of such lien.  This lien is superior to all other interests in the real property, including any lien that any mortgagor has on the property.

41.     At least once per year, each of New Jersey's 566 municipalities is required to hold an auction at which the municipality auctions each delinquent tax obligation it is owed by a property owner.  The delinquent tax obligation that is auctioned and purchased by investors is referred to as a "tax sale certificate" or "TSC."  Bidders at these auctions include individuals, corporate entities, banks and other financial institutions.  By auctioning off these obligations, the municipality receives funds it needs to operate without having to raise additional revenues through property tax increases to make up for the shortfall due to those who do not pay their property taxes.

42.     The winning bidder at the auction acquires the municipalities' lien on the real property at issue, and possesses the right to receive the principal amount owed, along with interest and penalties.  If, after a certain period of time the property owner does not satisfy or

"redeem" the lien, the TSC holder has the right to foreclose on the real property and collect the monies associated with the lien.

43.     Pursuant to the New Jersey statutes that govern the auction of TSC's, the bidding on the delinquent obligation being auctioned opens with the interest rate on the delinquent obligation at 18%.  However, the entire premise of the New Jersey statutory scheme is that the auction process would result in a competitive situation where bidders are engaged in driving *down* the opening interest rate of 18%, in many cases, the interest rate is driven down to close to zero percent.  Even at zero percent interest, the TSC holder still may receive penalties of between 2-6% from the delinquent property owner and has a first priority lien on the real property at issue.  Thus, auctions which result in the winning bid at 18% interest are supposed to be the exception and not the rule.

44.     Since at least as early 1998, however, defendants sought to ensure that the TSCs they purchased at the auctions carried the maximum 18% interest rate.  In order to do so, the defendants entered into a combination and/or conspiracy to rig the TSC auctions.  Specifically, the defendants, who are among the largest TSC purchasers in New Jersey, agreed to allocate the various delinquent tax obligations and refrain from bidding on others so that there would be no competition with respect to the obligations being auctioned.  As a result of the defendants' illegal agreement, the opening bid at 18% interest would end up being the only bid, and therefore, the auction would result in the winning bidder having the right to 18% interest on the delinquent tax obligation.

45.     The only way for a real property owner to remove the lien on its property associated with the TSC, would be to either pay the entire obligation, along with interest and

penalties, or face foreclosure so that the lien holder could receive the amount associated with the lien from the sale of the real property.

## VI.    VIOLATIONS ALLEGED

46.    Beginning as early as January 1, 1998 through the present, defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of Tax Sale Certificates in the State of New Jersey in unreasonable restraint of trade and commerce in violation of Section One of the Sherman Act, 15 U.S.C. § 1.

47.    The contract, combination and/or conspiracy consisted of an agreement among the defendants and their co-conspirators to rig the bids and allocate the market for the sale of Tax Sale Certificates in the State of New Jersey so that such Tax Sale Certificates would carry the maximum interest allowed by law.

48.    In formulating and effectuating this conspiracy, defendants and their co-conspirators did those things that they combined and conspired to do, including:

a.    Participating in meetings and conversations among themselves during which they agreed to rig bids and allocate markets for Tax Sale Certificates sold at auctions in New Jersey;

b.    Submitted bids and refrained from bidding, for Tax Sale Certificates in New Jersey, in accordance with their agreements reached; and

c.    Participated in meetings and conversations among themselves to implement, adhere and police the agreements they reached.

49.    For example, it has been publicly disclosed that many of the defendants named herein attended an auction on March 5, 2007 in the Borough of Newfield, New Jersey, and that pursuant to the conspiracy alleged herein, defendants submitted bids, or refrained from bidding with respect to the delinquent obligations being auctioned.

50.     Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to rig bids and allocate markets for the sale of Tax Sale Certificates in the State of New Jersey.

## VII.    CRIMINAL INVESTIGATION

51.     Beginning in 2011 and possibly earlier, the Antitrust Division of the United States Department of Justice began a criminal investigation into the market for the auction of Tax Sale Certificates in New Jersey.  According to the DOJ's website, the investigation is being conducted by the Antitrust Division's New York Field Office and the Federal Bureau of Investigation's Atlantic City, New Jersey office.  To date, the DOJ investigation has resulted in at least nine of the defendants agreeing to plead guilty to the illegal conspiracy alleged herein.

**A.     Isadore H. May**

52.     On August 24, 2011, defendant Isadore H. May pled guilty to a one-count criminal information charging with him violating the Sherman Act.  *See United States of America v. Isadore H. May*, 2:11-CR-00562 (D.N.J.) (DMC).  The information stated that May was a principal of an unnamed partnership located in Ventor City, New Jersey, which purchased tax liens from municipalities located in the State of New Jersey.

53.     Further, the information to which May pled charged as follows:

> From at least as early as the beginning of 2003 to until approximately February 2009, the exact dates being unknown to the United States, May and his co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by submitting non-competitive and collusive bids at certain public auctions for tax liens conducted by municipalities within the District of New Jersey . . . The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among May and his co-conspirators, the substantial terms of which were to rig bids for and allocate tax liens being auctioned by municipalities within the District of New Jersey.

54.     The criminal information to which May pled also charged:

> For the purpose of forming and carrying out the charged combination and conspiracy, May and his co-conspirators did those things that they combined and conspired to do, including, among other things:
>
> a.     attended meetings and engaged in discussions regarding bids for tax liens being auctioned by municipalities within the District of New Jersey;
>
> b.     agreed during those meetings and discussions not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding;
>
> c.     submitted bids in accordance with the agreements reached; and
>
> d.     purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates.

55.     Mr. May is scheduled to be sentenced on August 13, 2012.

**B.     William A. Collins**

56.     On August 24, 2011, the same day that defendant Isadore H. May agreed to plead guilty, defendant William A. Collins also agreed to plead guilty to a one count criminal information charging him with violating the Sherman Act.  *See United States of America v. William A. Collins*, 11-CR-563 (D.N.J.)(DMC).  The criminal information charged that Collins was a principal in a Medford, New Jersey partnership which purchased tax liens from municipalities in the State of New Jersey.

57.     Further, the criminal information to which Collins pled charged as follows:

> From at least as early as the beginning of 2003 to until approximately February 2009, the exact dates being unknown to the United States, COLLINS and his co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by submitting non-competitive and collusive bids at certain public auctions for tax liens conducted by municipalities within the District of New Jersey . . . The charged combination and conspiracy consisted of a continuing agreement,

understanding, and concert of action among COLLINS and his co-conspirators, the substantial terms of which were to rig bids for and allocate tax liens being auctioned by municipalities within the District of New Jersey.

58.     The criminal information to which Collins pled also charged as follows:

For the purpose of forming and carrying out the charged combination and conspiracy, COLLINS and his co-conspirators did those things that they combined and conspired to do, including, among other things:

a.      attended meetings and engaged in discussions regarding bids for tax liens being auctioned by municipalities within the District of New Jersey;

b.      agreed during those meetings and discussions not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding;

c.      submitted bids in accordance with the agreements reached; and

d.      purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates.

59.     Mr. Collins is scheduled to be sentenced on August 13, 2012.

## C.      David M. Farber

60.     On February 23, 2012, defendant David M. Farber agreed to plead guilty to a one-count criminal information charging him with violating the Sherman Act.  *See United States of America v. David M. Farber*, 12-CR-139 (D.N.J.)(DMC).  The criminal information charged that Farber held a limited partnership interest in defendant DSBD, and that from about the beginning of 2005 until approximately November 2008, pursuant to his partnership interest in DSBD, Farber bid and purchased on municipal tax liens in the State of New Jersey which were held as investments by defendants CCTSI and CCTSII.  Further, the information charged that from about December 2008 through July 2009, Farber also served as President of an unidentified

company, in which capacity he oversaw the purchase of tax sale certificates in the State of New

Jersey.

61.     Further, the criminal information to which Farber pled also charged as follows:

From at least as early as the beginning of 2005 until approximately
February 2009, the exact dates being unknown to the United
States, DAVID M. FARBER, the defendant, and his co-
conspirators, entered into and engaged in a combination and
conspiracy to suppress and eliminate competition by submitting
non-competitive and collusive bids at certain public auctions for
tax liens conducted by municipalities within the District of New
Jersey . . . The charged combination and conspiracy consisted of a
continuing agreement, understanding, and concert of action among
DAVID M. FARBER, the defendant, and his co-conspirators, the
substantial terms of which were to rig bids for and allocate tax
liens being auctioned by municipalities within the District of New
Jersey.

62.     The criminal information to which Farber pled also charged as follows:

For the purpose of forming and carrying out the charged
combination and conspiracy, DAVID M. FARBER, the defendant,
and his co-conspirators, did those things that they combined and
conspired to do, including, among other things:

a.      attended meetings and engaged in discussions regarding
bids for tax liens being auctioned by municipalities within
the District of New Jersey;

b.      agreed during those meetings and discussions not to
compete at certain tax lien auctions by allocating which tax
liens each would bid on or refrain from bidding;

c.      submitted bids in accordance with the agreements reached;
and

d.      purchased tax liens pursuant to those agreements at
collusive and non-competitive interest rates.

63.     Mr. Farber is scheduled to be sentenced on June 18, 2012.

**D.     Robert W. Stein**

64.     On February 23, 2012, defendant Robert W. Stein agreed to plead guilty to a one-count criminal information charging him with violating the Sherman Act.  *See United States of America v. Robert W. Stein*, 12-CR-140 (D.N.J.)(DMC).  The criminal information charged that Stein was an owner of an unidentified company, and that from 1996 until November 2010, he served as the President of that company.  Further, in his role as President, Stein bid, purchased and "oversaw" the Company's purchase of tax sale certificates in the State of New Jersey during that time period.

65.     Further, the criminal information to which Stein pled also charged as follows:

> From at least as early as 1998 until approximately spring 2009, the exact dates being unknown to the United States, ROBERT W. STEIN, the defendant, and his co-conspirators, including Company 1, entered into and engaged in a combination and conspiracy to suppress and eliminate competition by submitting non-competitive and collusive bids at certain public auctions for tax liens conducted by municipalities within the District of New Jersey . . . The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among ROBERT W. STEIN, the defendant, and his co-conspirators, the substantial terms of which were to rig bids for and allocate tax liens being auctioned by municipalities within the District of New Jersey.

66.     The criminal information to which Stein pled also charged as follows:

> For the purpose of forming and carrying out the charged combination and conspiracy, ROBERT W. STEIN, the defendant, and his co-conspirators, including Company 1, did those things that they combined and conspired to do, including, among other things:
>
> a.     attended meetings and engaged in discussions regarding bids for tax liens being auctioned by municipalities within the District of New Jersey;
>
> b.     agreed during those meetings and discussions not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding;

c.     submitted bids in accordance with the agreements reached; and

d.     purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates.

67.    Mr. Stein is scheduled to be sentenced on June 18, 2012.

**E.    Richard J. Pisciotta, Jr.**

68.    On August 24, 2011, defendant Richard J. Pisciotta, Jr. agreed to plead guilty to a one-count criminal information charging him with violating the Sherman Act. *See United States of America v. Richard J. Pisciotta, Jr.*, 11-CR-561 (D.N.J.)(DMC).

69.    Further, the information to which Pisciotta pled also charged as follows:

From at least as early as the beginning of 2003 to until approximately February 2009, the exact dates being unknown to the United States, PISCIOTTA and his co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by submitting non-competitive and collusive bids at certain public auctions for tax liens conducted by municipalities within the District of New Jersey . . . The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among PISCIOTTA and his co-conspirators, the substantial terms of which were to rig bids for and allocate tax liens being auctioned by municipalities within the District of New Jersey.

70.    The criminal information to which Pisciotta pled also charged as follows:

For the purpose of forming and carrying out the charged combination and conspiracy, PISCIOTTA and his co-conspirators did those things that they combined and conspired to do, including, among other things:

a.     attended meetings and engaged in discussions regarding bids for tax liens being auctioned by municipalities within the District of New Jersey;

b.     agreed during those meetings and discussions not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding;

> c.  submitted bids in accordance with the agreements reached; and
>
> d.  purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates.

71. Mr. Pisciotta is scheduled to be sentenced on August 13, 2012.

**F.  Robert E. Rothman**

72. On March 27, 2012, defendant Robert E. Rothman agreed to plead guilty to a one count criminal information which charged him with violating the Sherman Act. *See United States of America v. Robert E. Rothman*, 12-CR-210 (D.N.J.)(DMC).

73. Further, the information to which Rothman pled also charged as follows:

> From in or about the Spring of 2000 until approximately February 2009, the exact dates being unknown to the United States, ROBERT E. ROTHMAN, the defendant, and his co-conspirators, entered into and engaged in a combination and conspiracy to suppress and eliminate competition by submitting non-competitive and collusive bids at certain public auctions for tax liens conducted by municipalities within the District of New Jersey . . . The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among ROBERT E. ROTHMAN, the defendant, and his co-conspirators, the substantial terms of which were to rig bids for and allocate tax liens being auctioned by municipalities within the District of New Jersey.

74. The criminal information to which Rothman pled also charged as follows:

> For the purpose of forming and carrying out the charged combination and conspiracy, ROBERT E. ROTHMAN, the defendant, and his co-conspirators, did those things that they combined and conspired to do, including, among other things:
>
> a.  attended meetings and engaged in discussions regarding bids for tax liens being auctioned by municipalities within the District of New Jersey;
>
> b.  agreed during those meetings and discussions not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding;

      c.      submitted bids in accordance with the agreements reached; and

      d.      purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates.

75.     Rothman is scheduled to be sentenced on July 23, 2012.

**G.    Stephen E. Hruby**

76.     On or about April 17, 2012, defendant Stephen E. Hruby, agreed to plead guilty to a one count criminal information which charged him with violating the Sherman Act.  *See United States of America v. Stephen E. Hruby*, (case not yet assigned)(D.N.J.).  According to the information, from December 2002 until approximately the spring 2009, defendant Hruby was the Director of Acquisitions and later Vice President & Director of Acquisitions of an unidentified company, but on information and belief, is one of the M.D. Sass defendants.  The criminal information further charges that in both of his positions, Hruby bid on and oversaw the purchase of TSC's for one of the M.D. Sass defendants.

77.     Further, the information to which Hruby pled also charged as follows:

> From at least as early as December 2002 to until approximately February 2009, the exact dates being unknown to the United States, STEPHEN E. HRUBY, the defendant, and his co-conspirators, entered into and engaged in a combination and conspiracy to suppress and eliminate competition by submitting non-competitive and collusive bids at certain public auctions for tax liens conducted by municipalities within the District of New Jersey . . . The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among STEPHEN E. HRUBY, the defendant, and his co-conspirators, the substantial terms of which were to rig bids for and allocate tax liens being auctioned by municipalities within the District of New Jersey.

78.     The criminal information to which Hruby pled also charged as follows:

> For the purpose of forming and carrying out the charged combination and conspiracy, STEPHEN E. HRUBY, the

defendant, and his co-conspirators did those things that they combined and conspired to do, including, among other things:

a.   attended meetings and engaged in discussions regarding bids for tax liens being auctioned by municipalities within the District of New Jersey;

b.   instructed other bidders under his supervision to attend meetings and engage in discussions regarding bids for tax liens being auctioned by municipalities within the District of New Jersey;

c.   agreed during those meetings and discussions not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding;

d.   submitted bids in accordance with the agreements reached; and

e.   purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates.

## H.   **David Butler and DSBD, LLC**

79.   On or about April 23, 2012, defendants David Butler and DSBD, LLC, an entity in which Butler held a partnership interest, each agreed to plead guilty to a one count criminal information which charged them with violating the Sherman Act.  *See United States of America v. David Butler,* 2:12-CR-273-1-DMC (D.N.J.) ("Butler Information"); *United States of America v. DSBD, LLC,* 2:12-CR-274-1-DMC (D.N.J.) ("DSBD Information").  According to the Bulter Information, from in or about the beginning of 2005 until approximately November 2008, Butler bid on and purchased municipal tax liens which were held as investments by defendants CCTS I and CCTS II.  Also, according to the Butler Information, from in or about December 2008 through July 2009, Butler alos served as CEO of an unidentified company which purchased tax liens auctioned by municipalities in New Jersey.  Further, according to the DSBD Information, DSBD oversaw the acquisition by defendants CCTS Tax Liens I and CCTS Tax Liens II of tax liens auctioned by municipalities located in the State of New Jersey.

80.     Further, the information to which Butler pled also charged as follows:

From at least as early as the beginning of 2005 until approximately
February 2009, the exact dates being unknown to the United
States, DAVID BUTLER, the defendant, and his co-conspirators,
entered into and engaged in a combination and conspiracy to
suppress and eliminate competition by submitting non-competitive
and collusive bids at certain public auctions for tax liens conducted
by municipalities within the District of New Jersey . . . The
charged combination and conspiracy consisted of a continuing
agreement, understanding, and concert of action among DAVID
BUTLER, the defendant, and his co-conspirators, the substantial
terms of which were to rig bids for and allocate tax liens being
auctioned by municipalities within the District of New Jersey.

81.     Further, the information to which DSBD pled also charged as follows:

From at least as early as the beginning of 2005 until approximately
February 2009, the exact dates being unknown to the United
States, DSBD and its co-conspirators entered into and engaged in a
combination and conspiracy to suppress and eliminate competition
by submitting non-competitive and collusive bids at certain public
auctions for tax liens conducted by municipalities within the
District of New Jersey . . . The charged combination and
conspiracy consisted of a continuing agreement, understanding,
and concert of action among DSBD and its co-conspirators, the
substantial terms of which were to rig bids for and allocate tax
liens being auctioned by municipalities within the District of New
Jersey.

82.     The criminal information to which both Butler and DSBD pled also charged as

follows:

For the purpose of forming and carrying out the charged combination and conspiracy, [Butler and DSBD] and [their] co-conspirators did those things that they combined and conspired to do, including, among other things:

a.      attended meetings and engaged in discussions regarding bids for tax liens being auctioned by municipalities within the District of New Jersey;

b.      agreed during those meetings and discussions not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding;

c.      submitted bids in accordance with the agreements reached; and

d.      purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates.

## VIII.   EFFECT/DAMAGES

83.     Defendants' conspiracy to rig bids and allocate the market for TSCs auctioned in New Jersey during the Class Period, resulted in harm to Plaintiff and the proposed class because it resulted in them having to pay artificially inflated interest with respect to their delinquent tax obligation, or, has resulted in an artificially inflated interest being associated with the delinquent tax obligation they are legally required to repay and are part of the lien that has been placed on the property of Plaintiff and members of the class.

84.     As a direct and proximate result of defendants' and their co-conspirators unlawful contract, combination, and conspiracy, Plaintiff and the class members were injured and financially damaged in their business and property by having to pay more interest with respect to their delinquent tax obligation than they would have absent defendants' and their co-conspirators' unlawful activities.  The total amount of damages is presently undetermined but is in the millions of dollars.

## IX.   FRAUDULENT CONCEALMENT

85.     Defendants engaged in a successful, illegal bid-rigging and market allocation conspiracy which, by its very nature, was inherently self-concealing.

86.     As a result, until recently, neither Plaintiff nor the class members had knowledge of any of the foregoing violations, and neither Plaintiff nor the class members, until August 24, 2011, could have discovered through reasonable diligence that defendants and their co-conspirators had engaged in the foregoing violations, since defendants and their co-conspirators actively and fraudulently concealed these violations to obscure their illegal activity.

87.     For example, as set forth above, defendants met secretly and among themselves for the express purpose of rigging the bids and allocating delinquent municipal tax obligations in the State of New Jersey.  Defendants did not publicize these meetings or conversations, or the agreements discussed at the meetings.

88.     The Plaintiff and members of the class thus could not and did not learn of defendants' conspiracy and antitrust violations until approximately August 24, 2011 when it was publicly disclosed that defendants Isadore H. May, Richard J. Pisciotta, Jr. and William A. Collins would plead guilty to violating Section One of the Sherman Act and admit to participating in the conspiracy alleged herein.  The announcement of the guilty pleas disclosed, for the first time in the public domain, that defendants had engaged in a conspiracy to rig bids and allocate the markets for TSCs in the State of New Jersey during the Class Period.

89.     Defendants and their co-conspirators' fraudulent concealment tolled the statute of limitations applicable to the claims of Plaintiff and the class members.

## X.     CLASS ACTION ALLEGATIONS

90.     Plaintiff brings this action on behalf of itself and all others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons who owned real property in the State of New Jersey
> who had a Tax Sale Certificate issued with respect to their property
> that was purchased by a defendant during the Class Period.

91.     This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23(a)(1)-(4) and/or 23(b)(1), (b)(2) or (b)(3), and satisfies the requirements thereof.  As used herein, the term "Class members" shall mean and refer to the members of the class.

92.     While the exact number of members of the class is unknown to Plaintiff at this time and can only be determined by appropriate discovery, membership in the class is ascertainable based upon the records of the defendants and because the TSCs are recorded in the local register of deeds.  At this time, Plaintiff is informed and believes that the class likely includes thousands of members.  Therefore, the Class is sufficiently numerous that joinder of all members of the class in a single action is impracticable under Fed. R. Civ. P. 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

93.     Common questions of law and fact exist as to the members of the class, as required by Fed. R. Civ. P. 23(a)(2), and predominate over any questions that affect only individual members of the class within the meaning of Fed. R. Civ. P. 23(b)(3).

94.     The questions of fact that are common to the members of the class include, but are not limited to, the following:

> a.     Whether the defendants participated in the conspiracy alleged herein;
>
> b.     Whether the conspiracy alleged herein resulted in the interest rates of the Tax Sale Certificates associated with Plaintiff and class member's property to be set at artificially inflated levels; and

c.      Whether Class members have sustained damages as a result of the conspiracy alleged herein, and, if so, the proper measure and appropriate formula to be applied in determining such damages.

95.      Plaintiff's claims are typical of the claims of the other members of the class under Fed. R. Civ. P. 23(a)(3) because Plaintiff and each member of the class have been subjected to the same conspiracy alleged herein and have been damaged in the same manner thereby.

96.      Plaintiff will fairly and adequately represent and protect the interests of the class as required by Fed. R. Civ. P. 23(a)(4).  Plaintiff is an adequate representative of the class, in that it has no interests that are adverse to the interests of the members of the class.  Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained counsel who is competent and experienced in handling class action litigation on behalf of those who have been injured by violations of the antitrust laws.

97.      A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted in this action under Fed. R. Civ. P. 23(b)(3) because:

a.      the expense and burden of individual litigation makes it economically unfeasible for class members to seek redress other than through the procedure of a class action;

b.      if separate actions were brought by individual class members, the resulting duplicity of lawsuits would cause undue hardship and expense to the Court and the litigants by necessitating multiple trials of similar factual issues.

c.      Plaintiff is aware of no difficulty likely to be encountered in the management of this litigation that would preclude its maintenance as a class action.

## COUNT ONE

## (VIOLATION OF THE SHERMAN ACT, 15 U.S.C. § 1)

## <u>AGAINST ALL DEFENDANTS</u>

98.     Plaintiff repeats and realleges each allegation of paragraphs 1 through 97 as if fully set forth herein.

99.     Beginning as early as January 1998 and continuing through the present, the exact dates being unknown to Plaintiff and exclusively within the knowledge of defendants, defendants and their co-conspirators entered into a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) by artificially reducing or eliminating competition in New Jersey.

100.    In particular, defendants have combined and conspired to rig bids and allocate markets with respect to the sale of Tax Sale Certificates in the State of New Jersey during the Class Period.

101.    As a result of defendants' unlawful conduct, interest rates associated with delinquent municipal tax obligations auctioned by municipalities in New Jersey, have been set at artificially inflated levels.

102.    The contract, combination or conspiracy among defendants consisted of a continuing agreement, understanding, and concerted action among defendants and their co-conspirators.

103.    For purposes of formulating and effectuating their contract, combination, or conspiracy, defendants and their co-conspirators did those things they contracted, combined, or conspired to do, including:

a. exchanged information on auctions for Tax Sale Certificates in the State of New Jersey prior to the auctions;

b. agreed to rig bids and allocate markets for Tax Sale Certificates sold in the State of New Jersey during the Class Period;

c. submitted bids and refrained from submitting bids in accordance with the agreements reached among the defendants' and their co-conspirators; and

d. purchased Tax Sale Certificates auctioned in the State New Jersey during the Class Period.

104. As a result of defendants' unlawful conduct, Plaintiff and the other members of the Class have been injured in their businesses and property in that they have paid more interest associated with their delinquent tax obligation than they should have, or, are required to pay artificially inflated interest levels associated with their delinquent tax obligation, than they otherwise would have paid, or be required to pay, in the absence of defendants' unlawful conduct.

## COUNT TWO

## (INJUNCTIVE RELIEF FOR DEFENDATS' VIOLATIONS OF THE SHERMAN ACT)

## <u>AGAINST ALL DEFENDANTS</u>

105. Plaintiff repeats and realleges each allegation of paragraphs 1 through 104 as if fully set forth herein.

106. As alleged above, defendants knowingly and willfully engaged in a course of conduct designed to unlawfully rig bids and allocate tax liens being auctioned by New Jersey municipalities in violation of Section One of the Sherman Act, 15 U.S.C. § 1.

107.    Plaintiff and other members of the class have been injured in their business or property by reason of defendants' antitrust violations alleged in this complaint.  As a result of defendants' illegal conduct alleged in this complaint, plaintiffs were required, or are being required, to pay an artificially inflated rate of interest on the tax sale certificate associated with their property.  The plaintiff's injury is the type of injury that the antitrust laws were designed to prevent and the injury flows from defendants' unlawful conduct.  Plaintiff and members of the class are threatened with further injuries as a result of defendants' continuing scheme, including loss of real property through foreclosure and being required to pay inflated redemption rates to redeem their liens.

108.    Plaintiff and the class seek equitable and injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and other applicable law, to correct for the anticompetitive market effects caused by the unlawful conduct of defendants, and other relief so as to assure that similar anti-competitive conduct does not occur in the future.

## COUNT THREE

## (VIOLATION OF THE NEW JERSEY ANTITRUST ACT, N.J.S.A. 56:9-3)

## AGAINST ALL DEFENDANTS

109.    Plaintiff repeats and realleges each allegation of paragraphs 1 through 109 as if fully set forth herein.

110.    Beginning as early as January 1998 and continuing through the present, the exact dates being unknown to Plaintiff and exclusively within the knowledge of defendants, defendants and their co-conspirators entered into a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce in violation of the New Jersey Antitrust Act, N.J.S.A. 56:9-3, by artificially reducing or eliminating competition in New Jersey.

111.    In particular, defendants have combined and conspired to rig bids and allocate markets with respect to the sale of Tax Sale Certificates in the State of New Jersey during the Class Period.

112.    As a result of defendants' unlawful conduct, interest rates associated with delinquent municipal tax obligations auctioned by municipalities in New Jersey, have been set at artificially inflated levels.

113.    The contract, combination or conspiracy among defendants consisted of a continuing agreement, understanding, and concerted action among defendants and their co-conspirators.

114.    For purposes of formulating and effectuating their contract, combination, or conspiracy, defendants and their co-conspirators did those things they contracted, combined, or conspired to do, including:

a.    exchanged information on auctions for Tax Sale Certificates in the State of New Jersey prior to the auctions;

b.    agreed to rig bids and allocate markets for Tax Sale Certificates sold in the State of New Jersey during the Class Period;

c.    submitted bids and refrained from submitting bids in accordance with the agreements reached among the defendants' and their co-conspirators; and

d.    purchased Tax Sale Certificates auctioned in the State New Jersey during the Class Period.

115.    As a result of defendants' unlawful conduct, Plaintiff and the other members of the Class have been injured in their businesses and property in that they have paid more interest associated with their delinquent tax obligation than they should have, or, are required to pay

artificially inflated interest levels associated with their delinquent tax obligation, than they otherwise would have paid, or be required to pay, in the absence of defendants' unlawful conduct.

**COUNT FOUR**

**(UNJUST ENRICHMENT)**

**<u>AGAINST ALL DEFENDANTS</u>**

116.    Plaintiff repeats and realleges each allegation of paragraphs 1 through 115 as if fully set forth herein.

117.    As a result of the unlawful conduct described above, defendants have been unjustly enriched by collecting unlawfully interest amounts associated with each purchase of tax liens.

118.    Defendants have benefitted from their unlawful acts and it would be inequitable for defendants to be permitted to retain any of their ill-gotten gains.

119.    Plaintiff and members of the class are entitled to recover the amount of defendants' ill-gotten gains resulting from their unlawful, unjust and inequitable conduct.

**COUNT FIVE**

**(VIOLATION OF N.J.S.A. 54:5-63.1**

**<u>AGAINST ALL DEFENDANTS</u>**

120.    Plaintiff repeats and realleges each allegation of paragraphs 1 through 119 as if fully set forth herein.

121.    Beginning as early as January 1998 and continuing through the present, the exact dates being unknown to Plaintiff and exclusively within the knowledge of defendants, defendants

and their co-conspirators entered into a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce.

122. In particular, defendants have combined and conspired to rig bids and allocate markets with respect to the sale of Tax Sale Certificates in the State of New Jersey during the Class Period.

123. As a result of defendants' unlawful conduct, interest rates associated with delinquent municipal tax obligations auctioned by municipalities in New Jersey, have been set at artificially inflated levels.

124. Such artificially inflated interest rates are excessive charges and fees within the meaning of N.J.S.A. 54:5-63.1. These excessive fees and charges were imposed upon Plaintiff and the class intentionally and knowingly by defendants. As such, Plaintiff and members of the class are entitled to the relief of forfeiture of the tax sale certificates associates with their real property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the defendants as follows:

A. That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B. That the contract, combination or conspiracy, and the acts done in furtherance thereof by defendants and their co-conspirators, be adjudged to have been a *per se* violation of Section One of the Sherman Act, 15 U.S.C. § 1;

C. That the contract, combination or conspiracy, and the acts done in furtherance thereof by defendants and their co-conspirators, be adjudged to have been a *per se* violation of New Jersey Antitrust Act;

D.      That the interest rates associated with the tax sale certificates purchased by defendants were excessive within the meaning of N.J.S.A. 54:5-63.1 and as a result, defendants must forfeit such certificates back to plaintiff and members of the class;

E.      That judgment be entered for Plaintiff and members of the class against defendants for three times the amount of damages sustained by Plaintiff and members of the class as allowed by law, together with the costs of this action, including reasonable attorney's fees;

F.      That the Plaintiff and the class be awarded pre-judgment and post-judgment interest at the highest legal rate from and after the date of service of the complaint to the extent provided by law;

G.      An injunction enjoining, preliminarily and permanently, defendants from enforcing the artificially inflated and illegal rate of interest associated with the Tax Sale Certificates purchased by defendants; and

H.      That plaintiff and members of the class have such other, further or different relief as the case may require and the Court may deem just and proper under the circumstances.

### JURY TRIAL DEMAND

Plaintiff demands trial by jury on its claims alleged.

Dated: May 18, 2012

**PARIS ACKERMAN & SCHMIERER LLP**

By:      s/ Bryan H. Mintz
      Bryan H. Mintz, Esq.
      Ross H. Schmierer, Esq.
      David S. Paris, Esq.
      101 Eisenhower Parkway
      Roseland, New Jersey 07068
      (973) 228-6667

**SMITH + SCHWARTZSTEIN LLC**

Andrew B. Smith, Esq.
18 MacCulloch Ave.
Morristown, NJ 07960
(973) 206-1725

*Attorney for Plaintiff T&B Associates, Inc.*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Plaintiff T&B Associates, Inc., by its attorneys, hereby certifies that the matter in controversy is also the subject of the following actions:

| Caption | Civil Action No. |
|---|---|
| *Van Duzer Lang Boyer v. Stein et al* | 12-1893(FLW)(TJB) |

I hereby certify that the following statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: May 18, 2012

**PARIS ACKERMAN & SCHMIERER LLP**

By:   <u>s/ Bryan H. Mintz</u>
     Bryan H. Mintz, Esq.
     Ross H. Schmierer, Esq.
     David S. Paris, Esq.
     101 Eisenhower Parkway
     Roseland, New Jersey 07068
     (973) 228-6667

**SMITH + SCHWARTZSTEIN LLC**

Andrew B. Smith, Esq.
18 MacCulloch Ave.
Morristown, NJ 07960
(973) 206-1725

*Attorney for Plaintiff T&B Associates, Inc.*